Case No. 23-3346

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

Marilyn Crossley
*Plaintiff-Appellant*

v.

Kettering Adventist Healthcare, *et al.*
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Ohio

---

**BRIEF OF APPELLANT**

---

Katherine C. Ferguson (0079207)
Kevin R. Kelleher (0099167)
Kooperman Mentel Ferguson Yaross Ltd.
250 E. Town Street, Suite 250
Columbus, Ohio 43215
Telephone: (614) 344-4800
Facsimile: (614) 344-4801
Email: kferguson@kmfylaw.com
Email: kkelleher@kmfylaw.com

*Counsel For Plaintiff-Appellant*

**Oral Argument Requested**

# TABLE OF CONTENTS

Table of Contents ............................................................................. i

Table of Authorities ......................................................................... ii

Statement in Support of Oral Argument .................................................. vi

Statement of Jurisdiction................................................................... 1

Statement of the Case....................................................................... 2

Summary of the Argument.................................................................. 12

Argument..................................................................................... 15

  I. Standard of Review ..................................................................... 15

  II. The District Court Erred in Granting Defendants' Motion for Summary
     Judgment ............................................................................... 15

      A. The District Court Misstated the Standard for Pretext............................ 17

      B. The Honest Belief Doctrine Does Not Apply. ..................................... 20

      C. Plaintiff Carried Her Burden for Pretext.......................................... 25

Conclusion ................................................................................... 30

Certificate of Compliance ................................................................... 32

Certificate of Service ........................................................................ 31

Addendum.................................................................................... 33

4887-9020-4518, v. 4

# TABLE OF AUTHORITIES

**Cases**

*Babb v. Marysville Anesthesiologists*
   *P.C.* 942 F.3d 308 (6th Cir. 2019)............................................................. 21, 22

*Bartlett v. Gates,*
   421 F. Appx. 485 (6th Cir. 2010) ........................................................... 28, 29

*Blair v. Henry Filters, Inc.,*
   505 F.3d 517 (6th Cir. 2007) .................................................................. 17, 18

*Bledsoe v. TVA Bd. Of Dirs.,*
   42 F.4th 568 (6th Cir. 2022) ................................................................... 21, 30

*Brewer v. New Era, Inc.,*
   564 Fed. Appx. 834 (6th Cir. 2014) ............................................................15

*Briggs v. Univ. of Cincinnati,*
   11 F. 4th 498 (6th Cir. 2021) .................................................................. 22, 23

*Coryell Bank One Trust Co., N.A.,* 1
   01 Ohio St. 3d 175, 803 N.E.2d 781, 2004-Ohio-723 (Ohio 2004)..............15

*Demyanovich v. Cadon Plating & Coatings, L.L.C.,*
   747 F.3d 419 (6th Cir. 2014) ......................................................................16

*E.E.O.C. v. Ford Motor Co.,*
   782 F.3d 753 (6th Cir. 2015) .................................................................. 17, 18

*E.E.O.C. v. Hp Pelzer Auto. Sys.,*
   E.D. Tenn. No. 1:17-CV-31, 2018 U.S. Dist. LEXIS 133741 (Aug. 3, 2018)
   ....................................................................................................................23

*Ercegovich v. Goodyear Tire & Rubber Co.,*
   154 F.3d 344 (6th Cir. 1998) .................................................................. 28, 29

4887-9020-4518, v. 4

*Gaglioti v. Levin Group, Inc.*,
    508 Fed. Appx. 476 (6th Cir. 2012) ...........................................................26

*Griffin v. Finkbeiner*,
    689 F.3d 584 (6th Cir. 2012) .....................................................................18

*Hale v. Mercy Health Partners*,
    20 F. Supp. 3d 620 (S.D. Ohio 2014)..........................................................24

*Hostettler v. College of Wooster*,
    895 F.3d 844 (6th Cir. 2018) .....................................................................15

*Jones v. Honda of Am. Mfg.*,
    S.D. Ohio No. 3:13-cv-167, 2015 U.S. Dist. LEXIS 28682 (Mar. 9, 2015).16

*Logan v. Denny's*,
    259 F.3d 558 (6th Cir. 2001) .....................................................................16

*Lowe v. City of Monrovia*,
    775 F.2d 998 (9th Cir. 1985) .....................................................................17

*Macdonald-Bass v. J.E. Johnson Contracting, Inc.*,
    493 F. App'x 718 (6th Cir. 2012)................................................................27

*McDonnell Douglas Corp v. Green*,
    411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) ...............................15

*McPherson v. Kelsey*,
    125 F. 3d 989 (6th Cir. 1997) ....................................................................19

*Merendo v. Ohio Gastroenterology Grp., Inc.*,
    S.D. Ohio No. 2:17-cv-817, 2019 U.S. Dist. LEXIS 31507 (Feb. 27, 2019) ...
    .........................................................................................................  30

*Michael v. Caterpillar Fin. Servs. Corp.*,
    496 F.3d 584 (6th Cir. 2007) .....................................................................24

*Miles v. S. Cent. Hum. Res. Agency*,
    946 F.3d 883 (6th Cir. 2020) .....................................................................27

4887-9020-4518, v. 4

*Pierson v. Quad/Graphics Printing Corp.*,
749 F.3d 530 (6th Cir. 2014) ........................................................................15

*Reeves v. Sanderson Plumbing Prods.*,
530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) .................... 17, 18

*Risch v. Royal Oak Police Dep't*,
581 F. 3d 383 (6th Cir. 2009) ........................................................................28

*Rowan v. Lockheed Martin Energy Sys., Inc.*,
360 F.3d 544 (6th Cir. 2004) ........................................................................29

*Seeger v. Cincinnati Bell Tel. Co.*,
681 F.3d 274 (6th Cir. 2012) ........................................................................16

*Singfield v. Akron Metro. Hous. Auth.*,
389 F.3d 555 (6th Cir. 2004) ........................................................................17

*Smith v. Chrysler Corp.*,
155 F.3d 799 (6th Cir. 1998) ........................................................................24

*St. Mary's Honor Ctr. v. Hicks*,
509 U.S. 502, 511 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) ...........................17

*Stephens v. Kettering Adventist Healthcare*,
182 F. App'x 418 (6th Cir. 2006) ..................................................................24

*Tex Dep't of Cmty. Affairs v. Burdine*,
450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) .............................17

*Thompson v. Quorum Health Res., LLC*,
485 Fed. Appx. 783 (6th Cir. 2012) ....................................................... 24, 25

*Tingle v. Arbors at Hilliard*,
692 F.3d 523 (6th Cir. 2012) .................................................................. 22, 24

*Tisdale v. Fed. Express Corp.*,
415 F.3d 516 (6th Cir. 2005) ........................................................................25

4887-9020-4518, v. 4

*Willard v. Huntington Ford, Inc.*,
    952 F.3d 795 (6th Cir. 2020) ...........................................................................15

**Statutes**

28 U.S.C. § 1291 ...................................................................................................1

Fed. R. Civ. P. 56(a)...........................................................................................15

# STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to 6 Cir. R. 34, Appellant Marilyn Crossley ("Plaintiff," "Plaintiff-Appellant," "Marilyn," or "Mrs. Crossley"), through counsel, respectfully requests the opportunity to present oral argument. The parties and the Court would benefit from oral argument to fully explore the issues involved in this appeal.

4887-9020-4518, v. 4

# STATEMENT OF JURISDICTION

This is an appeal from a final judgment in a civil case. Plaintiff initiated this action in the United States District Court for the Southern District of Ohio, alleging age and disability discrimination in violation of federal and Ohio law. (Compl., RE 1.) Defendant Kettering Adventist Health ("Defendant Kettering") and Defendant Belinda Isaac ("Defendant Isaac") (collectively "Defendants") moved for summary judgment on July 22, 2022 (the "MSJ"). (MSJ, RE 58.) The district court granted their motion on March 20, 2023, dismissing all counts with prejudice. (*See* Ord. Granting MSJ, RE 66, at PageID # 1238.) Thirty days later, Plaintiff filed her Notice of Appeal. (*See* Not. App., RE 68, at PageID # 1240.) Accordingly, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

4887-9020-4518, v. 4

## STATEMENT OF THE ISSUES

1. Whether the district court erred as a matter of law when it placed an improper burden on Appellant to demonstrate pretext.

2. Whether the district court erred as a matter of law when it improperly applied the honest belief doctrine.

3. Whether the district court erred as a matter of law in finding that there was no genuine issue of material fact.

4. Whether the district court erred as a matter of law when it failed to construe all evidence in favor of Appellant.

5. Whether the district court erred as a matter of law when it found Appellant failed to demonstrate pretext

## STATEMENT OF THE CASE

### I. FACTUAL BACKGROUND

The following facts are supported by affidavits and/or the deposition testimonies of Marilyn Crossley, Megan Douglas, Belinda Isaac, Megan Sheldon, and Teresa Holman. These facts were all presented, as authenticated, to the district court judge in Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment.

#### A. **Marilyn's Employment with Defendant Kettering.**

Marilyn worked for Defendant Kettering for almost twenty years as a speech pathologist. (*See* Crossley Dep., RE 39, at PageID # 289-90.) From 2010 to August of 2019, Defendant Isaac served as Marilyn's direct supervisor. (*See* Isaac Dep., RE 43, at PageID # 401.) At the time of her termination, Marilyn was 68 years old. (*See*

Crossley Dep., RE 39, at PageID # 291.) Marilyn suffers from Ehlers-Danlos Syndrome, which causes her substantial pain and weakness and makes walking long distances difficult. (*See id.*, at PageID # 301.) For this reason, she obtained an accommodation to allow her to use disabled parking spaces. (*See id.*) In or around July of 2018, Marilyn developed multiple myeloma, a form of cancer. (*See id.* at PageID # 301-02.) Despite these conditions, Marilyn always performed her job well and received countless "thank you notes" from patients whom she successfully treated. (*See* Dep. Ex. C., RE 48-3, at PageID # 618-78; Crossly Aff., RE 61-1, at PageID # 1182; Isaac Dep., RE 43, at PageID # 407-08.)

## B. Marilyn's Direct Supervisor Repeatedly Pushed her to Retire and Criticized her Request to Park in Handicapped Parking.

Leading up to her termination, Marilyn's supervisor, Defendant Isaac, began pushing her to retire. (*See* Crossley Dep., RE 39, at PageID # 291.) Marilyn testified: "[Defendant Isaac] asked me when did I plan to retire, didn't I want to retire, wouldn't I want to spend more time with my grandkids." (*Id.*) Moreover, despite Marilyn's known disabilities, Defendant Isaac told Marilyn she could not park in Kettering's disabled parking spaces. (*See id.*, at PageID # 297-99.) Defendant Isaac also expressed doubt that Marilyn could perform her job duties while undergoing cancer treatment. (*See* Crossley Dep., RE 39, at PageID # 303.) ("[Defendant Isaac] wanted me to take off three months while I was on chemo, and I pushed back and said, 'That's not what my doctor told me to do.'")

3

**C.** **Defendants Drastically Reduced Marilyn's Workload After She Returned from Medical Leave.**

To treat her cancer, Marilyn underwent a stem cell transplant, necessitating a three month leave of absence. (*See id*, at PageID # 303.) Afterward, Marilyn's physicians cleared her to return to work full-time with no restrictions or accommodations. (*See id.*, at PageID # 311-13.) Despite documentation from her physician, Defendant Isaac expressed skepticism to Marilyn that she could handle a full-time schedule. (*See id.*, at PageID # 311-13; Isaac Dep., RE 43, at PageID # 427-28; Douglas Dep., RE 41, at PageID # 373; Dep. Ex. P, RE 49-10, at PageID # 710.) Marilyn ultimately agreed to work part time on a temporary basis but made clear that she intended to return to a full-time schedule after two weeks. (*See id.*, at PageID # 313.)

Unfortunately, Defendants did not provide her with enough patients to allow her to work full-time. (*See* Crossley Aff., RE 61-1, at PageID # 1182.) Instead, they diverted more patients to Marilyn's co-workers, leaving her schedule sparse. (*See id.*) When she did not have enough patients, Defendants forced Marilyn to take paid time off ("PTO") or go home without pay. (*See* Crossley Dep., RE 39, at PageID # 312.) In July of 2019, Marilyn sent an email to the office manager, Deb McConnell, and Defendant Isaac asking why Kettering stopped assigning her as many patients. (*See* Crossley Aff., RE 61-1, at PageID # 1182.) Marilyn explained that when she compared her schedule to those of her coworkers, she saw that Kettering had not

4887-9020-4518, v. 4

assigned her as many patients to treat as her younger, not disabled coworkers. (*See* Dep. Ex. BB, RE 49-22, at PageID # 741.) Marilyn further explained that her lighter case load caused her to struggle to be productive and forced her to take PTO. (*See id.*) Deb McConnell thanked Marilyn for her input and promised to see if she could schedule more patients for her. (*See id.*, at PageID # 740.) However, despite her inquiries and requests, Kettering did not increase Marilyn's patient load.

Marilyn's direct supervisor, Defendant Isaac, testified that she received Marilyn's email but never responded to Marilyn in writing nor met with Marilyn to inform her that looking at co-worker's schedules and patient lists violated the Heath Insurance Portability and Accountability Act ("HIPAA"). (*See* Isaac Dep. RE 43, at PageID # 438-40.) Defendant Isaac further testified that she never issued Marilyn a written warning to notify Marilyn that her conduct could be considered a HIPAA violation. (*See id.* at PageID # 439-40.) Instead, Ms. McConnell merely told Marilyn in passing that she should not look at co-worker's schedules and related patient charts, claiming that it violated HIPAA. (*See* Crossley Dep., RE 39, at PageID # 330, 333.) Ms. McConnell was not Marilyn's supervisor. (*See id.*) Moreover, Marilyn told Ms. McConnell that she did not think her conduct violated HIPAA. (*See id.*)

### D. Marilyn Had a Legitimate Business Reason to Access Records.

Defendant Kettering's HIPAA policy maintains that employees do not violate HIPAA if they have a ***legitimate business reason*** for accessing patient records. (*See*

Douglas Dep., RE 41, at PageID # 378.) Kettering gives the employee's direct supervisor the sole authority to determine whether a legitimate business reason for accessing records exists. (*See id.*, at PageID # 379.) The application Marilyn and her fellow speech therapists used to access patient information had a "scheduler window." (*See* Crossley Aff., RE 61-1, at PageID #1183.) All speech therapists could view the protected health information ("PHI") of patients according to which speech therapist treated them that day. (*See id.*) Marilyn's coworkers generally understood that they could access PHI for scheduling purposes. (*See* Holman Aff. RE 61-2, at PageID # 1188.) Marilyn often did this to assist and train her coworkers. (*See* Crossley Aff., RE 61-1, at PageID # 1183.)

The record facts make clear that Defendants were not concerned with determining whether Marilyn had a legitimate reason to access records. (*See* Douglas Dep., RE 41, at PageID # 440-41.) Instead, Defendants compiled a list of all patient files Marilyn accessed and summarily concluded that Marilyn did not have a business reason for accessing the records of any patients Marilyn did not directly treat. (*See* Isaac Dep., RE 43, at PageID # 441.) While the facts show that Marilyn accessed many of these records to help train a coworker in treating patients, Defendants concluded, without investigating, that Marilyn lacked a legitimate business reason to access patient files. (*See* Crossley Aff., RE 61-1, at PageID #1183; Isaac Dep., RE 43, at PageID # 442-43.) Marilyn tried to explain that she,

like her coworkers, had access to a scheduling window. (*See* Crossly Dep., RE 39, at PageID # 326.) She also stated that she understood these actions to be permissible. (*See id.*, at PageID # 333-34.) During this meeting, Defendants did not provide Marilyn with any actual policy that she purportedly violated. (*See* Douglas Dep., RE 41, at PageID # 381.)

### E. Defendants Terminate Marilyn's Employment

Without conducting a valid investigation, Defendants decided to terminate Marilyn's employment on August 20, 2019. (Douglas Dep., RE 41, at PageID # 383.) Prior to the termination meeting, Defendants again compiled a list of patient records Marilyn accessed. (*See* Dep. Ex. EE, RE 49-25, at PageID # 752-53.) Like the previous list, Defendants never provided Marilyn with a meaningful opportunity to review the list and explain herself. (*See* Crossley Aff., RE 61-1, at PageID # 1183.) Importantly, Marilyn accessed some of those records at her coworkers' request to assist in treating a patient. (*See* Crossley Dep., RE 39, at PageID # 329.) Defendants, nevertheless, terminated Marilyn's employment without articulating any policy that they believed Marilyn violated. (*See* Isaac Dep., RE 43, at PageID # 450-51; Crossley Aff., RE 61-1, at PageID # 1183.)

Later, after the initiation of litigation, Defendant Isaac testified that Marilyn violated the following policies: (1) the Compliance Code of Conduct; (2) the Sanctioning Guidelines; (3) the Conduct and Discipline Policy; and (4) Kettering's

Standards of Behavior Policy. (*See* Isaac Dep., RE 43, at PageID # 451-52.) These policies, if at all, make only passing reference to HIPAA and PHI. (*See* Dep. Ex. GG, 49-27, at PageID # 764-72; Dep. Ex. II, 49-29, at PageID # 780-82.) Defendant Kettering contradicted Isaac's testimony, claiming Marilyn did not violate the Compliance Code of Conduct or the Sanctioning Guidelines. (*See* Sheldon Dep., RE 55, at PageID # 1056-57.) Instead, it added two new policies: IP-KH Using, Requesting, and Disclosing Minimum Necessary Information; and the IP-KH Use and Disclosure of PHI for Treatment, Payment and Healthcare Operations. (*See id.*, at PageID # 1056-60.) While Kettering has a progressive disciplinary policy, Defendants claim that Marilyn's conduct warranted immediate termination. (*See* Douglas Dep., RE 41, at PageID # 369; Isaac Dep., RE 43, at PageID # 450-51.) As part of her termination, Defendants had security escort Marilyn out of the building. (*See id.*)

Interestingly, Marilyn's alleged severe policy violations did not prevent Defendant from soliciting Marilyn to reapply for her old position. (*See* Crossley Aff., RE 61-1, at PageID # 1185.) In fact, Defendants did so on three subsequent occasions. (*See id.*, at PageID # 1185-86.) Jenny Kujawa, the recruiter responsible for sending the solicitation, personally vetted her and found nothing regarding her termination. (*See* Holman Aff., RE 61-2, at PageID # 1188.)

8

## II. PROCEDURAL BACKGROUND

On July 22, 2020, Marilyn filed suit in the United States District Court for the Southern District of Ohio. (*See* Compl. RE 1.) In her Complaint, Marilyn alleges disability and age discrimination under federal and Ohio law. (*See id.*)

On July 22, 2022, Defendants moved for summary judgment on all counts, arguing the honest belief doctrine prevented Plaintiff from carrying her burden to establish pretext for her discrimination claims. (*See* MSJ, RE 58, at PageID # 1123-26.) Defendants did not challenge whether Plaintiff established a prima facie case of discrimination. (*See id.*) Plaintiff, in her memorandum in opposition, set forth ten independent bases for finding that Defendants' proffered reasons for terminating Plaintiff were pretext for discrimination: (1) Defendants conducted a pretextual investigation to justify Plaintiff's termination ("First Argument"); (2) Defendants could not articulate a policy violation in spite of this investigation and Plaintiff's disagreement that she violated any policies ("Second Argument"); (3) Defendants supplied inconsistent, conflicting reasons for Plaintiff's termination ("Third Argument"); (4) Defendant Kettering's HIPAA policies were vague and ambiguous ("Fourth Argument"); (5) Defendants could not identify who determined Plaintiff's conduct amounted to a policy violation ("Fifth Argument"); (6) Plaintiff's conduct did not violate any policies ("Sixth Argument"; (7) Defendants abandoned their progressive disciplinary policy in terminating Plaintiff ("Seventh Argument"); (8)

Defendant Isaac made discriminatory comments about Plaintiff ("Eighth Argument"); (9) These comments betrayed discriminatory animus and tainted the decision-making process ("Ninth Argument"); and (10) Defendant Kettering solicited Plaintiff to reapply for her old position ("Tenth Argument"). (*See* Mem. Contra MSJ, RE 61, at PageID # 1173-79.) Plaintiff identified specific record evidence to support each argument. (*See id.*) The district court granted the MSJ on all counts, dismissing all of these arguments. (*See* Ord. Granting MSJ, RE 66, at PageID #1238.) Its Order does not address whether Plaintiff established a prima facie case of discrimination. (*See id.* at PageID # 1228-29.)

Specifically, the district court dismissed Plaintiff's Second and Sixth Arguments, citing the honest belief doctrine. (*See id.* at PageID # 1229-32.) In doing so, the court found Plaintiff challenged the factual basis for Defendants' reason for terminating her employment. (*See id.* at PageID # 1231.) This is untrue. (*See* Mem. Contra MSJ, RE 61, at PageID # 1173-79,) ("***Defendants Proffered Reasons for Marilyn's Termination Did Not Actually Motivate Defendants' Action.***") Additionally, the district court interpreted Plaintiff's First Argument to challenge the adequacy of the investigation. (*See* Ord. Granting MSJ, RE 66, at PageID # 1229-30.) It then applied case law applying the honest belief doctrine. (*See id.*) However, Plaintiff argued Defendants "did not conduct" a real, but rather a pretextual, investigation. (Mem. Contra MSJ, RE 61, at PageID # 1174.)

4887-9020-4518, v. 4

The District Court dismissed Plaintiff's Third Argument, finding Defendants offered additional, consistent, reasons for terminating Plaintiff's employment. (*See* Ord. Granting MSJ, RE 66, at PageID #1232-33.) But the district court ignored record evidence establishing that Defendant Kettering directly contradicted Defendant Isaac in supplying the policies Defendants claim Plaintiff violated. (*See* Sheldon Dep., RE 55, at PageID # 1056-60.) The district court does not address this. (*See* Ord. Granting MSJ, RE 66, at PageID # 1232-33.) Rather, it insists that these reasons were not inconsistent or contradictory because the policies "referenced" all "forbade employees from accessing PHI without authorization." (*Id.*, at PageID # 1232-33.)

In her Eighth and Ninth Arguments establishing pretext, Plaintiff identified multiple discriminatory comments made by Defendant Isaac. The district court dismissed these comments as too attenuated to have any probative value. (*See id*. at PageID # 1234-35.) In doing so, the district court blatantly ignored that the comments were made by Plaintiff's direct supervisor and bore directly on whether Defendant Isaac devalued Plaintiff's ability to perform her job duties as a speech therapist because of her age and disabilities. (*See id.*; *see also* Mem. Contra MSJ, RE 61, at PageID # 1177-78.)

Finally, the district court, in a footnote, dismissed Plaintiff's final argument for pretext. It claimed Defendants solicitation that Plaintiff reapply for her old

position did not bear on whether Defendants lied about why they terminated Plaintiff's employment. (*See* Ord. Granting MSJ, RE 66, at PageID # 1235, n 3.) The district court further found that Plaintiff waived her argument because she did not demonstrate how the solicitations showed "discriminatory animus." (*Id.*)

## SUMMARY OF THE ARGUMENT

This matter is an employment discrimination lawsuit. Plaintiff alleges that Defendants terminated her employment because of her age and disabilities. Defendants deny these allegations. The district court dismissed this case on all counts, finding Plaintiff did not establish pretext for purposes of summary judgment. In doing so, the district court made several errors.

First, the district court summarily dismissed undisputed evidence that Defendant Kettering asked Plaintiff to reapply for her position after termination. The court deemed this argument waived because Plaintiff did not show how the solicitations demonstrated discriminatory animus. Courts urge against disposing of employment discrimination cases on summary judgment precisely because discriminatory animus is difficult to show. Instead, plaintiffs must produce evidence to rebut a defendants' nondiscriminatory reason for terminating an employee. Doing so creates an inference of discrimination. Requiring Plaintiff to demonstrate discriminatory animus at the pretext stage contravenes Supreme Court and Sixth Circuit precedent. Plaintiff need only cast doubt on Defendants proffered reason.

She met this burden by submitting undisputed record evidence that Defendants contacted her and asked her to reapply for her old job.

Second, the court misapplied the honest belief doctrine when it dismissed Plaintiff's First, Second, and Third Arguments demonstrating pretext. The honest belief doctrine only applies when Plaintiff challenges the ***factual basis*** for Defendants' nondiscriminatory reason. Instead, Plaintiff argues that her conduct did not actually motivate her termination and challenged Defendants conclusion that conduct violated HIPAA. Arguing the latter does not challenge the factual basis for her termination. As to the former, Plaintiff demonstrates she did not violate any of Kettering's policies, casting doubt on whether Defendants cared if she violated any policies. Therefore, the honest belief doctrine does not apply.

The district court interpreted Plaintiff's argument to challenge the adequacy of Defendants' investigation, citing cases in which it was at issue. The honest belief doctrine requires reasonable reliance on particularized facts to thwart an argument for pretext. Accordingly, when a defendant relies on an investigation to justify its belief, it places its adequacy at issue. However, Plaintiff argued that the investigation itself was pretextual. The district court relied on inapposite case law in deciding this issue.

Third, the district court erroneously dismissed Plaintiff's Third, Eighth, and Ninth arguments for pretext. With her Third Argument, Plaintiff demonstrates that

even when Defendants finally identified the specific polices she allegedly violated, Defendant representatives provided contradictory testimony regarding the actual policies violated. This blatant inconsistency in Defendants' testimony is sufficient to establish pretext. Plaintiff's Eighth and Ninth Arguments for pretext showed that Defendant Isaac made discriminatory comments towards Plaintiff. The district court dismissed these comments as too attenuated to bear on Plaintiff's termination. However, it ignored several factors courts evaluate in determining the probative value of discriminatory comments as evidence of pretext.

The district court ignored that these comments were made by Plaintiff's direct supervisor, which increases their probative value. Defendant Isaac also encouraged Plaintiff to retire and mused about what she could do if she was retired. It also disregarded how these comments expressed doubt that Plaintiff could perform her job with her disabilities. Defendant Isaac encouraged Plaintiff to take medical leave for her disability when she did not want to do so and threatened to report Plaintiff for having an accommodation. These kinds of comments have strong probative value in demonstrating pretext. The district court ignored all of this to conclude otherwise.

For these reasons, as described in greater detail below, the district court erred in granting Defendants' Motion for Summary Judgment. This Court should reverse the district court's decision.

# ARGUMENT

## I.     STANDARD OF REVIEW

This Court reviews "*de novo* a district court's decision to grant a motion for summary judgment." *See*, *e.g.*, *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 805 (6th Cir. 2020) (emphasis added). This Court may only affirm if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The Court "must view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014). The plaintiff must "present sufficient evidence to permit a reasonable jury to find in its favor." *Id.*, at 536. They can meet this burden with indirect evidence, which requires the factfinder to make "inferences to reach the conclusion that Defendant discriminated against Plaintiffs." *Brewer v. New Era, Inc.*, 564 Fed. Appx. 834, 838, 840 (6th Cir. 2014). Plaintiff relied on indirect evidence.

## II.    THE DISTRICT COURT ERRED AS A MATTER OF LAW GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Where a plaintiff provides indirect evidence of discrimination, the court applies a burden shifting framework. *See*, *e.g.*, *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)[1]. First, the plaintiff

---

[1] Claims for age and disability discrimination under Ohio law are analyzed under the same burden-shifting framework. *See*, *e.g.*, *Coryell Bank One Trust Co., N.A.*, 101 Ohio St. 3d 175 803 N.E.2d 781, 2004-Ohio-723, ¶ 15 (Ohio 2004); *see also Hostettler v. College of Wooster*, 895 F.3d 844, 848, n.1 (6th Cir. 2018).

must establish a prima facie case of discrimination. *See*, *e.g.*, *Logan v. Denny's*, 259 F.3d 558, 567 (6th Cir. 2001). The defendant then must "articulate some legitimate nondiscriminatory reason" for terminating the employee. *Id*. The plaintiff then must show the defendant's nondiscriminatory reason was pretextual. *See*, *e.g.*, *id.*

To do so, the plaintiff must produce evidence from which a jury could reasonably doubt the defendant's nondiscriminatory reason. *See*, *e.g.*, *Jones v. Honda of Am. Mfg.*, S.D. Ohio No. 3:13-cv-167, 2015 U.S. Dist. LEXIS 28682, at *39 (Mar. 9, 2015). A plaintiff must show that Defendants' "proffered reasons '(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action.'" *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 431 (6th Cir. 2014) (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)). Plaintiff limited her arguments to the second prong.

The district court did not address whether Plaintiff established a prima facie case of discrimination. Instead, it limited its analysis to whether Plaintiff demonstrated questions of fact exist as to pretext. For the reasons stated below, the district court erred as a matter of law and ignored undisputed record evidence when it concluded Plaintiff did not establish an issue of fact on whether the Defendants provided a pretextual reason for terminating her employment.

## A.    The District Court Misstated the Standard for Pretext.

In her Tenth Argument for pretext, Plaintiff identifies record evidence demonstrating that Defendant Kettering solicited her to reapply for the position from which it terminated her. The district court, citing *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753 (6th Cir. 2015), summarily dismissed this evidence as insufficient to demonstrate discriminatory animus. This Court should reverse, finding this evidence is sufficient to establish a question of fact as to pretext.

First, this Court urges "caution" against granting summary judgment on the issue of pretext because "an employer's true motivations are particularly difficult to ascertain." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 564 (6th Cir. 2004) (citing *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985)). Accordingly, "summary judgment for the defendant" is rarely appropriate in discrimination cases. *Id.* (citing *Tex Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, n. 8, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

Second, to show pretext, Plaintiff's needs only "to rebut, [] not to disprove" the Defendants' stated nondiscriminatory reason. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532 (6th Cir. 2007) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 146-49, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). This burden "merges" with her overarching burden to show that she is "the victim of

intentional discrimination." *Hicks*, 509 U.S. 502, at 516-17; *Reeves*, 430 U.S. 133, at 146 ("The ultimate question in every disparate treatment case is whether the plaintiff was the victim of intentional discrimination"). Put another way, Plaintiff, must "show *both* that the employer's proffered reason was not the real reason for its action, *and* that the employer's real reason was unlawful." *Ford Motor Co.*, 782 F.3d at 767 (citing *Hicks*, 509 U.S. at 515; *Reeves*, 430 U.S. at 148).

Third, Plaintiff, in rebutting the employer's proffered reason, *creates* an inference of discrimination. *See*, *e.g.*, *Hicks*, 509 U.S. 502, at 511, 533 ("rejection of the defendant's proffered reasons [] permit[s] the trier of fact to infer the ultimate fact of intentional discrimination."); *Reeves*, 430 U.S. 133, at 147. Evidence that a defendant's "explanation is unworthy of credence" is itself "probative of intentional discrimination." *Id*. (noting such evidence "may be quite persuasive.") Pretext casts doubt on the Defendants' justification, making discrimination "the most likely alternative explanation." *Id.* It therefore permits a trier of fact to conclude the employer unlawfully discriminated. *See*, *e.g.*, *id.* at 148.

Fourth, Courts do not require plaintiffs to present evidence of discrimination in addition to evidence of pretext. *See*, *e.g.*, *id.*, at 149 (holding a court "erred" in requiring "a plaintiff must always introduce additional, independent evidence of discrimination."); *see also Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012) (same); *Blair*, 505 F.3d 517, at 533 ("Blair did not need to produce additional

evidence to support a finding of pretext."). Regardless, the district court dismissed Defendant Kettering's solicitations to Marilyn to reapply for her old position because it found they did not demonstrate "discriminatory animus." In doing so, the district court ignored how the evidence shows Defendant Kettering did not actually believe Plaintiff's conduct warranted termination. If it did so believe, why would it ask Plaintiff, on two occasions, to reapply for her old position?

Finally, Plaintiff did not waive this argument. The district court cites *McPherson v. Kelsey*, 125 F. 3d 989, 995-96 (6th Cir. 1997), for the proposition that an argument is waived where the litigant fails to explain the elements of her claim. *See id. McPherson* is inapposite and easily distinguishable. Here, Plaintiff cites the offer to reapply as evidence of pretext, and to cast doubt on Defendants' proffered nondiscriminatory reason for termination. (*See* Mem. Contra, RE 61, at PageID # 150, 1178.) ("Defendants' proffered reasons for terminating Marilyn were pretext because. . . . Kettering is interested in rehiring Marilyn. . . . Surely, if Marilyn committed HIPAA violations and insubordination to the extent that she needed to be terminated and escorted out of the building by security, Kettering would not be seeking to employ Marilyn again.) The district court erred as a matter of law in deeming this argument waived.

19

**B.**     <u>The Honest Belief Doctrine Does Not Apply.</u>

The district court used the honest belief doctrine, both explicitly and implicitly, to reject Plaintiff's First, Second, and Sixth Arguments for pretext. (*See* Ord. Granting MSJ, RE 66, at PageID # 1229-32.) Explicitly, the district court dismissed Plaintiff's Second and Sixth Arguments, holding she could not challenge the factual basis for Defendants' nondiscriminatory reason. Implicitly, the district court applied the honest belief doctrine to find that Defendants conducted an adequate investigation. In doing so, the district court misconstrued Plaintiff's arguments for pretext as challenging the factual basis of Defendants' nondiscriminatory reason. Plaintiff made no such arguments. The district court erred as a matter of law in applying the honest belief doctrine to these arguments.

> **1.**     **Plaintiff Does Not Contend that Defendants' Proffered Reason Has No Basis in Fact.**

Plaintiff's Sixth Argument for pretext challenges Defendants' conclusion that she violated any HIPAA policies and Her Second Argument demonstrates Defendants failed to respond to identify the specific policy violated. The district court dismissed both arguments on the grounds that the honest belief doctrine prevents Plaintiff from disputing the factual basis for her termination. However, Plaintiff's arguments challenge whether her conduct is what motivated her termination. The district court therefore erred in using the honest belief doctrine to dismiss these arguments.

20

First, the honest belief doctrine allows "an employer" who "honestly believes in a mistaken or baseless" justification for terminating an employee to avoid a finding of pretext. *Bledsoe v. TVA Bd. Of Dirs.,* 42 F, 4th 568, 585 (6th Cir. 2022). If an employer lacks the required "discriminatory intent," its proffered reason for discharging the employee "cannot be pretextual." *Id.* This doctrine can only apply to arguments that challenge the factual basis of the employer's nondiscriminatory reason. *See*, *e.g.*, *id.*; *Babb v. Marysville Anesthesiologists P.C.*, 942 F.3d 308, 323 (6th Cir. 2019) (refusing to apply the honest belief doctrine where the plaintiff did not "challenge the facts underlying" the defendants proffered reasoning, and instead challenged "the likelihood that a reasonable" employer "actually relied on those facts" to terminate their employment.).

Second, the honest belief doctrine cannot apply where an employee challenges the employer's actual motivation for terminating her employment. *See*, *e.g.*, *id.*, at 322-23 ("Maryville invokes the 'honest belief rule.' . . . [E]ven if we accepted Maryville's description of the magnitude of Babb's clinical errors as the gospel truth, we would still be faced with an even more glaring factual dispute: whether those clinical errors 'actually motivated' Maryville to fire Babb.") Similarly, here, Plaintiff does not challenge the underlying factual basis for her termination. Instead, Plaintiff presents facts showing that when she disputed whether her actions were a

violation, Defendants failed to articulate the policy that she violated. (*See* Crossley Aff., RE 61-1, at PageID # 1183.)

Third, challenging an employer's assertion that the employee violated its policy does not challenge its factual basis. *See Babb,* at 322 (refusing to apply the honest belief doctrine where the plaintiff disputed whether their conduct amounted to "clinical errors," as defendants alleged. The Court in *Babb held:* "[t]his case is thus distinguishable from the "honest belief" cases cited by Maryville . . ., where the employee advanced a 'bare assertion' that the facts the employer relied on in firing them were wrong or overstated." *Id.* at 323 (citing *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012). Similar to *Babb*, Plaintiff here disputes whether her actions violated HIPAA. She did not dispute whether she accessed the patient files. The honest belief doctrine therefore does not apply.

Finally, this argument is one of ten Plaintiff offers to demonstrate pretext. Plaintiff also argued that Defendants' inability to articulate the specific policy she violated in response to her assertion that he did not violate a HIPAA related policy demonstrates pretext as well. *Briggs v. Univ. of Cincinnati*, 11 F. 4th 498, 517-18 (6th Cir. 2021) ("Indeed, this Court has held repeatedly that the post-hoc nature of a justification can create a genuine dispute of material fact on the issue of pretext. . . . UC's attempt to invoke the honest-belief rule does not defeat that conclusion."). Defendants failed to articulate the policy Plaintiff purportedly violated until well

into litigation. This fact alone creates questions of fact regarding Defendants' actual motivation. The honest belief doctrine cannot foreclose this argument.

## 2. The Court Incorrectly Applied the Honest Belief Doctrine.

Plaintiff, in her First Argument, argued that Defendants conducted a pretextual investigation to bolster their decision to terminate her employment. In doing so, she put Defendants' actual motivation at issue. Accordingly, the honest belief doctrine does not apply. Despite this, the district court cited numerous cases citing the honest belief doctrine to analyze whether defendants conducted an adequate investigation. In doing so, the court misconstrued Plaintiff's argument and relied upon inapposite case law to dismiss Plaintiff's claims. The Court should reverse the lower court's holding.

First, to avail themselves of the honest belief doctrine, defendants must rely on reasonable and particularized facts. *See*, *e.g.*, *Briggs,* 11 F. 4th 498, at 515. When a defendant relies on facts gleaned from an investigation, it places the adequacy of that investigation at issue. *See*, *e.g.*, *E.E.O.C. v. Hp Pelzer Auto. Sys.,* E.D. Tenn. No. 1:17-CV-31, 2018 U.S. Dist. LEXIS 133741, at *21 (Aug. 3, 2018) ("The dispute over the quality of the investigation is material—if the investigation was so flawed as plaintiffs allege, then there could be no basis in fact for defendant to believe Black was lying.") Accordingly, whether an investigation is adequate only bears on whether the Defendant can invoke the honest belief doctrine. *See id.*, at *22.

Second, as a result, the district court cited cases addressing the honest belief doctrine in analyzing whether the investigation was adequate. (*See* Ord. Granting MSJ, RE 66, at PageID # 1230-31) (citing *Tingle*, 692 F.3d 523, 531 ("The employer's claim of **honest belief** is necessarily tied to the nature of its investigation."); *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007) ("The key inquiry in assessing whether an employer holds such an **honest belief** is . . ."); *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998) ("Although this circuit has not previously addressed whether the version of the '**honest belief**' **rule** . . ."); *Stephens v. Kettering Adventist Healthcare*, 182 F. App'x 418, 421-22 (6th Cir. 2006) (citing *Smith*); *Hale v. Mercy Health Partners*, 20 F. Supp. 3d 620, 632-33 (S.D. Ohio 2014) ("To the extent Plaintiff seeks to challenge Defendant's **honest belief** . . .")). These cases do not apply.

Third, Plaintiff argued the investigation itself was pretextual. A plaintiff can demonstrate pretext by showing the underlying investigation to be a sham. *See*, *e.g.*, *Thompson v. Quorum Health Res., LLC*, 485 Fed. Appx. 783, 792 (6th Cir. 2012) ("Thompson argued that [the] investigation was therefore a sham investigation . . . to obscure [defendant's] retaliatory motive."). Where an investigation is centered on a policy violation, a court can infer pretext where the defendant shows it is "not truly concerned with compliance" with that policy. *Id.*, at 792-93. ("Quorum's sham investigation showed that the company was not truly concerned with compliance

4887-9020-4518, v. 4

with its Code of Conduct. . . . [I]t was therefore unlikely that Thompson was actually fired because he had violated the Code of Conduct.") Here, Plaintiff presented record evidence that the investigation was a sham and not concerned with whether Plaintiff's access of patient records was justified by a legitimate business reason. (*See* Crossley Dep., RE 39 at PageID # 330-31, 326, 333-34; Douglas Dep., RE 41 at PageID # 381-82; Isaac Dep., RE 43, at PageID # 440-43; Crossley Aff., RE 61-1, at PageID # 1183.)

Fourth, courts can infer pretext where the plaintiff is subject to, but does not participate in, the investigation justifying their termination. *See Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 530 (6th Cir. 2005) ("FedEx's chief investigator, never spoke to Gardner about the details of the FedEx pallet account or ever attempted to reconcile the account balance."). Defendants claimed Plaintiff committed a policy violation, refused to hear her explanation, refused to conduct a valid investigation, and terminated her employment without being able to articulate any policy that her actions violated. Plaintiff therefore met her burden in demonstrating questions of fact exist as to whether Defendants' investigation was pretextual.

### C.  Plaintiff Carried Her Burden for Pretext.

The district court erred as a matter of law when it held that Plaintiff did not meet her burden to establish pretext. (*See* Ord. Granting MSJ, RE 66, at PageID # 1235-36.) Plaintiff, in addition to the arguments above, identifies record facts

25

showing that Defendants supplied inconsistent reasons for terminating her employment, and that Defendant Isaac made discriminatory comments that cast doubt on the actual motivations underlying Plaintiff's termination. The district court erroneously held that neither argument carried Plaintiff's burden to establish pretext. The Court should reverse.

### 1. Defendants Provided Conflicting Reasons for Plaintiff's Termination.

Plaintiff, in her Third Argument for pretext, presents record facts showing that Defendants supplied conflicting and inconsistent reasons for terminating Plaintiff's employment. Specifically, Plaintiff noted how Defendants first alleged a general HIPAA violation, later pointed to three policies that did not reference HIPAA, and then changed their answer again. (*See* Douglas Dep., RE 41, at PageID #381; Isaac Dep., RE 43, at PageID # 451-52; Sheldon Dep., RE 55, at PageID #1056-60.) Instead of construing this evidence in Plaintiff's favor, the district court found Defendants provided additional, rather than conflicting reasons for Plaintiff's termination. In doing so, the district court ignored the clear contradictions in Defendants' testimonies when it dismissed Plaintiff's claims. The Court should reverse.

Inconsistent and conflicting reasons for terminating an employee supplied by the decision-makers serve as evidence of pretext. *See*, *e.g.*, *Gaglioti v. Levin Group, Inc.*, 508 Fed. Appx. 476, 482-83 (6th Cir. 2012) ("contradictory" testimony of "two

key players" was sufficient to establish pretext by itself). The district court notes Defendants may supply additional reason for termination if they are not contradictory. (Ord. Granting MSJ, RE 66, at PageID # 1232-33.) (citing *Miles v. S. Cent. Hum. Res. Agency*, 946 F.3d 883, 891 (6th Cir. 2020); *Macdonald-Bass v. J.E. Johnson Contracting, Inc.*, 493 F. App'x 718, 726 (6th Cir. 2012)). However, Defendants supplied conflicting reasons. Defendant Kettering directly contradicted Defendant Isaac's testimony that Plaintiff violated the Compliance Code of Conduct and the Sanctioning Guidelines. The district court ignored this.

The Court should therefore reverse the district court's holding that Plaintiff did not establish pretext by showing the Defendant proffered inconsistent reasons for her termination.

## 2. Defendants Made Discriminatory Comments About Plaintiff's Age.

Plaintiff, in her Eighth and Ninth Arguments for pretext, presents evidence of discriminatory comments made by Defendant Isaac to Plaintiff. Specifically, Plaintiff testified that Defendant Isaac repeatedly (1) suggested that Plaintiff retire; (2) expressed doubt that Plaintiff could do her job because of her disability; (3) insisted Plaintiff take a leave of absence to treat her disability; and (4) became upset when she learned that Plaintiff was entitled to disabled parking. (*See* Crossley Dep. RE 39, at PageID # 291, 297-99, 303-04, 311-13; Douglas Dep., RE 41, at PageID # 373; Isaac Dep., RE 43, at PageID # 427-28; Dep. Ex. P, RE 49-10, at PageID

27

#710.) Again, instead of construing this evidence in Plaintiff's favor, the held these comments were too attenuated in time from Plaintiff's termination to serve as evidence of pretext. It erred as a matter of law in doing so.

First, discriminatory comments and remarks can "serve as probative evidence of pretext." *Bartlett v. Gates*, 421 F. Appx. 485, 491 (6th Cir. 2010). This is true even when those remarks do not "coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment." *Risch v. Royal Oak Police Dep't*, 581 F. 3d 383 (6th Cir. 2009) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998)). Additionally, comments showing discriminatory animus for one claim tend to prove pretext for the other. *See*, *e.g.*, *Bartlett*, 421 Fed. Appx. 485, at 492 ("Although these discriminatory comments only concern the Plaintiff's age, they establish pretext with respect to both of Plaintiff's unlawful discrimination claims because they cast doubt on the basis in fact of Defendant's proffered legitimate, non-discriminatory reasons.")

Second, courts "must carefully evaluate" the "probative value" of these comments. *Id.*, at 491. In doing so, they look to the "declarant's position in the employer's hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged employment action, as well as whether the statement buttresses other evidence of pretext." *Id*. Here, the court

looked only at the temporal connection. The district court cites to *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544 (6th Cir. 2004) in support of its holding. However, the Court in *Rowan* dismissed the discriminatory comments as "irrelevant" because they were not made by a "decision-maker." *Id* at 550. Defendant Isaac participated in the decision to terminate Plaintiff's employment and had sole responsibility of determining whether Plaintiff's accessing of patient records was justified by a legitimate business reason. (*See* Douglas Dep., RE 41, at PageID # 379.).

Third, the declarant, Defendant Isaac, was Plaintiff's direct supervisor. Comments made by "senior managers" are sufficiently probative to overcome an extended timeframe between the comments and termination. *See*, *e.g.*, *Ercegovich*, 154 F.3d 344, at 357 (holding the declarant's position as head of the division was sufficient to overcome a "fourteen" month gap because the "discriminatory remarks" betrayed "hostility on the part of the most senior managers" towards Plaintiff.). The fact that the comments came from Defendant Isaac, by itself, establishes their probative value.

Fourth, discriminatory comments suggesting retirement, when made by a decisionmaker carry the same probative value. *See*, *e.g.*, *Bartlett*, 421 Fed. Appx. 485, at 491-92 (finding pretext where "Plaintiff's supervisor, and Kathleen Lehman, the selecting official at the agency, informed him that his 34 years on the job were

'enough'; joked about whether he had taken up 'antiquing or traveling or something like that'; and suggested that Plaintiff should retire.) Defendant Isaac made similar comments encouraging Plaintiff to retire and spend time with her grandchildren.

Finally, comments encouraging a disabled employee to take medical leave are sufficiently probative to establish pretext as well. *See*, *e.g.*, *Bledsoe*, 42 F. 4th 568, at 581. In addition, comments in which a supervisor combines negative comments related to an accommodation with a negative employment action bolster an argument for pretext. *See Merendo v. Ohio Gastroenterology Grp., Inc.*, S.D. Ohio No. 2:17-cv-817, 2019 U.S. Dist. LEXIS 31507, at *41-44 (Feb. 27, 2019) ("low marks and negative comments merely bolster Plaintiff's other evidence of pretext."). Defendant Isaac threatened to report Plaintiff to H.R. for using the disabled parking spot. In addition, she encouraged Plaintiff to take medical leave because she felt that her disability made her unable to do her job. Combined, these two comments provide clear insight into Defendant Isaac's discriminatory animus.

Accordingly, the Court should reverse the district court's holding that the discriminatory comments Plaintiff offered do not demonstrate pretext.

## CONCLUSION

For these reasons, the Court should reverse the district court's order granting Defendants' motion for summary judgment on Plaintiff's claims for age and disability discrimination.

Respectfully Submitted,

/s/ Katherine C. Ferguson
Katherine C. Ferguson (0079207)
Kevin R. Kelleher (0099167)
KOOPERMAN MENTEL FERGUSON YAROSS LTD.
250 E. Town Street, Suite 250
Columbus, Ohio 43215
Telephone: (614) 344-4800
Facsimile: (614) 344-4801
Email: kferguson@kmfylaw.com
Email: kkelleher@kmfylaw.com

*Counsel For Plaintiff-Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing Brief of Appellees with the Clerk of the Court using the CM/ECF system on this 20th day of June 2023, which will cause notice of electronic filing to be sent to the parties of record.

*/s/ Katherine C. Ferguson*
Katherine C. Ferguson

31

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned certifies this Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B).

1. Exclusive of the Exempted Portions in Fed. R. App. P. 32(a)(7)(B), the Brief contains: 6,893 words.

2. The Brief has been prepared: in proportionally spaced typeface using Times New Roman, 14 font.

*/s/ Katherine C. Ferguson*
Katherine C. Ferguson

4887-9020-4518, v. 4

# **ADDENDUM**

| Record Entry No. | Description of Document | Date Filed |
|---|---|---|
| 1 | Complaint | July 22, 2020 |
| 1-1 | EEOC Notice of Right to Sue | July 22, 2020 |
| 39 | Deposition of Marilyn Crossley | May 17, 2022 |
| 41 | Deposition of Megan Douglas | May 17, 2022 |
| 43 | Deposition of Belinda Isaac | May 17, 2022 |
| 48-3 | Thank You Notes | June 9, 2022 |
| 48-5 | HR-KHN Conduct and Discipline Policy Pages | June 9, 2022 |
| 49-10 | Emails between Defendant Isaac and Megan Douglas Re Plaintiff | June 9, 2022 |
| 49-22 | Email Chain between Multiple Parties Re Plaintiff Chart Access | June 9, 2022 |
| 49-25 | Email Chain Between Multiple Parties Re Plaintiff Audit | June 9, 2022 |
| 49-27 | Email from Megan Douglas to Defendant Isaac with KHN Policies for Plaintiff Termination | June 9, 2022 |
| 49-29 | Kettering Standards of Behavior Policy | June 9, 2022 |
| 55 | Deposition of Megan Sheldon | July 21, 2022 |
| 58 | Defendants' Motion for Summary Judgment | July 22, 2022 |
| 61 | Plaintiff's Memorandum Contra to Defendants' Motion for Summary Judgment | September 2, 2022 |
| 61-1 | Crossley Affidavit | September 2, 2022 |
| 61-2 | Holman Affidavit | September 2, 2022 |
| 66 | Order Granting Defendants' Motion for Summary Judgment | March 20, 2023 |
| 68 | Notice of Appeal | April 19, 2023 |

4887-9020-4518, v. 4