Case No. 23-3346

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Marilyn Crossley
*Plaintiff-Appellant*

v.

Kettering Adventist Healthcare, *et al.*
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Ohio

**REPLY BRIEF OF APPELLANT**

Katherine C. Ferguson (0079207)
Kevin R. Kelleher (0099167)
KOOPERMAN MENTEL FERGUSON YAROSS LTD.
250 E Town St., Ste. 200
Columbus, Ohio 43215
Telephone: (614) 344-4800
Facsimile: (614) 344-4801
Email: kferguson@kmfylaw.com
Email: kkelleher@kmfylaw.com

*Counsel For Plaintiff-Appellant*

**Oral Argument Requested**

# TABLE OF CONTENTS

Table of Contents ................................................................................................... i

Table of Authorities .............................................................................................. ii

Introduction ............................................................................................................1

Argument.................................................................................................................3

I.      Defendants Inverted the Standard of Review.....................................................3

II.     The District Court Erred in Holding Plaintiff Did Not Create an Issue of Fact
        on Pretext. ...................................................................................................5

        A.      The Time Frame Cited by Defendants Is Irrelevant. ...........................5

        B.      Defendants Supplied Conflicting Reasons for Terminating Plaintiff's
                Employment. ........................................................................................8

        C.      The Honest Belief Doctrine Does Not Apply. ..................................10

Conclusion ...........................................................................................................15

Certificate of Compliance ....................................................................................17

Certificate of Service ...........................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Babb v. Maryville Anesthesiologists P.C.*,
942 F.3d 308 (6th Cir. 2019) ...................................................................3, 10

*Belew v. SECO Architectural Sys.*,
E.D. Tenn. No. 3:16-cv-214, 2017 U.S. Dist. LEXIS 103198 (July 5, 2017) 8

*Briggs v. Univ. of Cincinnati,*,
11 F.4th 498 (6th Cir. 2021) ...............................................................8

*Cicero v. Borg-Warner Auto, Inc.*,
280 F.3d 579 (6th Cir. 2002) ...............................................................8

*Ercegovich v. Goodyear Tire & Rubber Co.*,
154 F.3d 344 (6th Cir. 1998) ...............................................................7

*Gagliotti v. Levin Grp. Inc.*,
508 F. App'x 476 (6th Cir. 2012) ...............................................................8

*Inland Bulk Transfer Co. v. Cummins Engine Co.*,
332 F.3d 1007 (6th Cir. 2003) ...............................................................4

*LeVine v. Dejoy*,
64 F.4th 789 (6th Cir. 2023) ...............................................................4

*Ornelas v. United States*,
517 U.S. 690, 116 S. Ct. 1657, 134 L.Ed.2d 911 (1996) (Scalia, J., dissenting)
...............................................................4

*Pierson v. Quad/Graphics Printing Corp.*,
749 F.3d 530 (6th Cir. 2014) ...............................................................8

*Thompson v. Quorum Health Res., LLC*,
485 Fed. Appx. 783 (6th Cir. 2012)...............................................................12

*Tisdale v. Fed. Express Corp.*,
415 F.3d 516 (6th Cir. 2005) ...............................................................13

*Twa v. Mercy Health Partners*,
    W.D. Mich. No. 1:19-cv-1049, 2021 U.S. Dist. LEXIS 157590 (Aug. 20, 2021)
    ...........................................................................................................................5

**<u>Regulations</u>**

45 C.F.R. § 164.512(d)(2) ..........................................................................................14

4891-0087-0773, v. 1

# INTRODUCTION

This Court should reverse the district court's decision granting summary judgment for Defendants. In her Opposition to Defendants' Motion for Summary Judgment, Plaintiff identified abundant record evidence creating a question of fact as to the existence of pretext, all of which the district court improperly dismissed. Defendants' Merit Brief fails to demonstrate the absence of a question of fact on pretext and does not show that the honest belief doctrine protects them. The Court should reverse the district court's decision granting summary judgment.

First, Defendants urge this Court to disregard Plaintiff's arguments because of the *de novo* standard of review. However, the *de novo* standard weighs in Plaintiff's favor. On *de novo* review, this Court pays no deference to the legal conclusions and factual findings of the lower court. *De novo* review does not, as Defendants assert, require an appellate court to disregard a party's legal argument. Defendants essentially seek to invert the *de novo* standard and have this Court uncritically ratify the district court's conclusion. The Court should refuse to do so.

Second, Defendants argue the time frame between Defendant Isaac's discriminatory comments, Plaintiff's termination, and Defendant Kettering's solicitation to Plaintiff to reapply for her prior position are too attenuated in time to serve as evidence of pretext. Defendants are wrong. First, they overstate the temporal attenuation for many of the discriminatory comments. Moreover, Defendants do not

explain how any time frame would bolster their excuse for terminating Plaintiff. The fact that these requests came two years after Plaintiff's termination doesn't alter their probative value. Regardless, temporal proximity is only one of four factors Courts assess in determining the probative value of discriminatory comments. Defendants do not dispute that the remaining factors all point towards pretext.

Third, Defendants claim the conflicting reasons they provided for terminating Plaintiff's employment are not evidence of pretext. Defendants incorrectly argue that there is no adequate precedent that conflicting justifications are evidence of pretext. To the contrary, substantial precedent establishes the opposite: an employer's conflicting justifications for an adverse action demonstrate pretext. Next, Defendants contend they did not provide contradictory justifications because every justification related to the Health Insurance Portability and Accountability Act ("HIPAA") and/or Defendant Kettering's own policies regarding Protected Health Information ("PHI"). However, many of the policies Defendants cited have nothing to do with HIPAA or PHI. Put simply, Defendants' argument is, itself, a conflicting justification.

Finally, Defendants argue that the honest belief doctrine forecloses all of Plaintiff's arguments for pretext. They first claim Plaintiff paints with too fine a brush distinguishing Defendants' conclusion that she violated HIPAA with the factual basis for that conclusion. However, this Circuit drew that very distinction in

2

2019 in *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308 (6th Cir. 2019). This Court should follow its past reasoning and reject Defendants' attempt to use the honest belief doctrine to avoid liability.

Defendants then defend the adequacy of the investigation, which is not at issue. In opposing Defendants' Motion for Summary Judgment, Plaintiff identified record evidence calling into question Defendants' motivations for conducting the investigation they used to justify Plaintiff's termination. In response, Defendants argue Plaintiff can only challenge their motivation by attacking the factual basis of the investigation. Defendants claim Plaintiff did not do that, despite taking the opposite position a page earlier. The record contains ample evidence showing Defendants conducted a sham investigation. The Court should hold the honest belief doctrine does not apply and that Plaintiff has created an issue of fact on whether Defendants' investigation was pretextual.

For these reasons, this Court should reverse the district court's order granting summary judgment for Defendants and find that Plaintiff established pretext.

## ARGUMENT

## I. DEFENDANTS INVERTED THE STANDARD OF REVIEW

Defendants urge this Court to disregard Plaintiff's argument that the district court incorrectly dismissed Defendant Kettering's requests that Plaintiff reapply for her prior position as evidence of pretext. (*See* Appellee's Brief, Doc. 21, at p. 49, n.

3

15.) They argue Plaintiff's argument is "irrelevant" because this Court reviews the appeal *de novo*. (*Id.*) This is precisely the point. This Court is not bound to the district court's factual or legal determinations. This Court should find Defendant Kettering's repeated solicitations that Plaintiff reapply are evidence of pretext that demonstrate Defendants' true discriminatory intent.

A *de novo* review pays no deference to the legal conclusions and factual findings of the lower court. *See*, *e.g.*, *Ornelas v. United States*, 517 U.S. 690, 705, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996) (Scalia, J., dissenting); *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003). However, it does not preclude an appellate court from reversing a district court's grant of summary judgment due to faulty legal reasoning. *See*, *e.g.*, *LeVine v. Dejoy*, 64 F.4th 789, 799 (6th Cir. 2023) (reversing a grant of summary judgment reviewed *de novo* because "[t]he district court failed to give due consideration to [the plaintiff's] evidence and arguments."). For that reason, Plaintiff's position on how the district court erred is not "irrelevant," as Defendants contend.

Instead, Defendants insist, without explaining, that the district court correctly concluded the solicitations to reapply were not evidence of pretext. (*See* Appellee's Brief, Doc. 21, at p. 49, n. 15.) Paradoxically, they ask this Court to disregard Plaintiff's argument and uncritically accept the district court's conclusion. This would invert the *de novo* standard of review. The Court should refuse to do so.

4

## II. THE DISTRICT COURT ERRED IN HOLDING PLAINTIFF DID NOT CREATE AN ISSUE OF FACT ON PRETEXT.

### A. The Time Frame Cited by Defendants Is Irrelevant.

Defendants next argue that the Court should disregard the requests to reapply because Defendant Kettering sent them two years after Plaintiff's termination. (*See id.*, at p. 50.) However, Defendants stop short of explaining the relevance of this timeframe, in light of their characterization of Plaintiff's purportedly egregious behavior. They also assert that Defendant Isaac's discriminatory comments are too old to bear on her termination. (*See id.*) This is wrong for two reasons: (1) Defendants overstate the timeframe for many of Defendant Isaac's comments; and (2) Defendants ignore the other factors that demonstrate their probative value. The Court should reject both these arguments.

First, Defendants claim their offers to reapply could not "have played any role in" their decision to terminate her employment. (*Id.*) Plaintiff makes no such argument. Rather, Plaintiff argues that Defendants' pretextual characterization of her conduct is "so negative that one would not expect" Defendants to "ever invite" Plaintiff to "reapply." *Twa v. Mercy Health Partners*, W.D. Mich. No. 1:19-cv-1049, 2021 U.S. Dist. LEXIS 157590, at *16 (Aug. 20, 2021) (holding a "reasonable jury could infer" pretext from an employer's offer that an employee reapply after discharge).

Defendants argue Plaintiff's conduct was so "egregious"[1] that it necessitated her termination, but somehow not egregious enough to bar her from future employment with Defendant Kettering. In fact, Plaintiff's supposed conduct violations did not even merit even a mention in her personnel file. (*See* Mem. Contra MSJ, RE 61-2, at PageID # 1188) ("[T]here was nothing in [Plaintiff]'s file regarding her reason for termination.") Defendant Kettering's offers to reapply obviously create an issue of fact on pretext, irrespective of the time between then and Plaintiff's termination.

Second, Defendants' claim that the discriminatory comments are over two years old is only partially correct. Record evidence establishes Defendant Isaac made four discriminatory comments: (1) she encouraged Plaintiff to retire, (2) she sought to prevent Plaintiff from using disability parking and threatened to report Plaintiff over her use of disabled designated parking, (3) she insisted Plaintiff take a leave of absence to treat her cancer, and (4) she expressed doubt that Plaintiff could do her job because of her disability. (*See* Crossley Dep., RE 39, at PageID # 291, 297-98, 302-03.)

Defendant Isaac made the first and second comments in 2017, two years prior to Plaintiff's termination. (*See id.*, at PageID # 291, 297-98.) However, she made the

---

[1]Defendants characterized Plaintiff's conduct as "egregious" three separate times in their brief. (*See* Appellee's Brief, at pp. 24, 37, 49.)

third comment in July of 2018, thirteen months prior. (*See id.* at PageID # 302-03.) Defendant Isaac made the fourth comment on February 7, 2018, which is six months prior to Plaintiff's termination. (*See* Dep. Ex. P, RE 49-10, at PageID #710.) The third and fourth comments are well within the time frame permitted by this Circuit. *See*, *e.g.*, *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998) (discriminatory comments within fourteen months of an employee's termination can serve as evidence of pretext).

Third, the timeframe between a discriminatory comment and an employee's termination is merely one of four factors this Court evaluates in determining its probative value. *See*, *e.g.*, *Bartlett v. Gates*, 421 Fed. Appx. 485, 491 (6th Cir. 2010). Defendants do not dispute the other factors weigh heavily in Plaintiff's favor. For example, Defendants ignore that each of Defendant Isaac's comments are cumulative evidence of pretext. These weren't two isolated comments made two years prior to her termination. Defendant Isaac made clear her true attitude towards Plaintiff, her age, and her disability, and did so repeatedly over a two-year period.

Rather Defendants falsely assert that all these comments are two years old. (*See* Appellee's Brief, Doc. 21, at p. 50.) To the extent that this is even true, it does not cast doubt on the probative value of Defendant Isaac's discriminatory comments. The Court should reject Defendants' argument and find that the offers to reapply and the discriminatory comments establish pretext.

7

**B.**    **Defendants Supplied Conflicting Reasons for Terminating Plaintiff's Employment.**

Defendants next attack Plaintiff's argument that they provided contradictory reasons for her termination. (*See id.* at pp. 50-51.) Their argument is twofold: (1) there is no precedent to support Plaintiff's argument that contradictory justifications can serve as evidence of pretext; and (2) Defendants did not actually supply contradictory reasons for terminating Plaintiff's employment. (*See id.*) Defendants' arguments fail on both points.

First, it is well settled that a plaintiff can establish "pretext" by showing "that the Defendants' justification for firing [them] changed over time." *Cicero v. Borg-Warner Auto, Inc.*, 280 F.3d 579, 592 (6th Cir. 2002); *see also Briggs v. Univ. of Cincinnati,*, 11 F.4th 498, 513 (6th Cir. 2021); *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 540 (6th Cir. 2014); *Gagliotti v. Levin Grp. Inc.*, 508 F. App'x 476, 481 (6th Cir. 2012); *Belew v. SECO Architectural Sys.*, E.D. Tenn. No. 3:16-cv-214, 2017 U.S. Dist. LEXIS 103198, at *21-23 (July 5, 2017).

Second, Defendants note Plaintiff cites to only "one, unpublished case— *Gagliotti*" in support of her argument. (*See* Appellee's Brief, Doc. 21, at p. 50.) Defendants cite no case saying otherwise. (*See id.*, at pp. 50-51.) Moreover, they attempt to distinguish *Gagliotti*, arguing the finding of pretext turned on the "contradictory testimony regarding the specific *reason* that an employee was

8

terminated." (*Id*. at p. 51.) That is precisely what Plaintiff argues. Defendant Isaac and Defendant Kettering contradicted each other when asked which specific policy Plaintiff violated. (*See* Isaac Dep., RE 43, at PageID # 451-52; Sheldon Dep., RE 55, at PageID # 1056-60.)

Third, these contradictions are not "minor variations" as Defendants contend. (Appellee's Brief, Doc. 21, at p. 51.) Defendant Isaac, in her deposition, listed four policy violations, none of which prohibited Plaintiff's conduct. (*See* Isaac Dep., RE 43, at PageID # 451-52; Dep. Ex. GG, 49-27, at PageID # 764-72; Dep. Ex. II, 49-29, at PageID # 780-82.) Defendant Kettering, in its own deposition, then contradicted Defendant Isaac. (*See* Sheldon Dep., RE 55, at PageID # 1056-57.) For the first time, Defendant Kettering added two new policies not listed by Defendant Isaac: IP-KH Using, Requesting, and Disclosing Minimum Necessary Information (the "Minimum Necessary Policy"), and the IP-KH Use and Disclosure of PHI for Treatment, Payment, and Healthcare Operations (the "Use and Disclosure Policy"). (*See id*., at PageID # 1056-60.) Further, these supposed policy violations somehow failed to warrant even a note in Plaintiff's personnel file. (*See* Mem. Contra MSJ, RE 61-2, at PageID # 1188.) Defendants unmistakably contradicted each other in stating their specific reason for terminating Plaintiff's employment.

Fourth, Defendants attempt to harmonize these contradictions by asserting that all policies identified by Kettering and Isaac reflect Defendant Kettering's duty

to safeguard PHI. (*See* Appellee's Brief, Doc. 21, at p. 51.) But that too is a contradiction. Only the Sanctioning Guidelines and the Minimum Necessary Policy address PHI. (*See* Dep. Ex. GG, 49-27, at PageID # 764-72; Dep. Ex. II, 49-29, at PageID # 780-82.) The remaining policies do not. Defendants' own argument contradicts their justification for terminating Plaintiff's employment. These repeated contradictions, at the very least, create an issue of fact pretext.

### C. **The Honest Belief Doctrine Does Not Apply.**

#### 1. **Defendants and the District Court Conflate Conclusions with Fact.**

Defendants mischaracterize the conclusion of their investigation for an undisputed fact. They argue that Plaintiff paints "with way too fine of a brush" in drawing this distinction. (Appellee's Brief, Doc. 21, at p. 51.) They contend that, because Plaintiff challenges the conclusion of their investigation, her entire argument disputes the factual basis of her termination. (*See id.*) That is not the case.

In 2019, this Court drew the very distinction against which Defendants argue. A challenge to their reliance on their investigation is not a challenge to the factual basis of the investigation itself. *See Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 322-23 (6th Cir. 2019) (refusing to apply the honest belief doctrine because the plaintiff put into question whether the defendant "actually relied on [the] facts" learned in its investigation) ("[E]ven if we accepted Maryville's description of the

10

magnitude of Babb's clinical errors as the gospel truth, we would still be faced with an even more glaring factual dispute: whether those clinical errors 'actually motivated' Maryville to fire Babb.")

The Court should make this distinction again. Plaintiff does not challenge the underlying facts of the investigation. Rather, she challenges whether she violated Defendant Kettering's policies. The honest belief doctrine does not apply.

## 2. The Motivation behind Defendants' Investigation Is at Issue.

Defendants next argue the "nature of the investigation" is unassailable because of its quality. (Appellee's Brief, Doc. 21, at p. 52.) ("There is therefore no genuine issue of material fact regarding the quality of the investigation . . . the uncontested evidence establishes that a thorough investigation was performed.") This argument misses the mark. Likewise, Defendants do not address the evidence Plaintiff relies upon to show the investigation was pretext for discrimination.

First, the adequacy of the investigation is only relevant to the extent that a defendant reasonably relied on its conclusions. *See*, *e.g.*, *E.E.O.C. v. Hp Pelzer Auto. Sys.,* E.D. Tenn. No. 1:17-CV-31, 2018 U.S. Dist. LEXIS 133741, at *22 (Aug. 3, 2018). Plaintiff does not challenge the adequacy of Defendants' investigation. Rather, Plaintiff challenges the motivation of that investigation and its ultimate result.

Second, Defendants contend the only way for Plaintiff to challenge their actual motivation is to put the factual findings of the investigation at issue. (*See*

11

Appellee's Brief, Doc. 21, at p. 52.) They claim Plaintiff fails to do this, despite having taken the opposite position in the paragraph immediately preceding this assertion. (*See id*. at pp. 51-52.) ("[Plaintiff] does nothing but allege that the factual basis for her termination is flawed . . . . [Plaintiff] fails to dispute *any* of the central factual findings of the investigation.") Again, Plaintiff does not put the factual findings of Defendants' investigation at issue. She challenges their underlying motivations.

Third, Defendants do not address the evidence showing the investigation was a sham. Notably, Defendants did not articulate a policy violation until well into litigation. *See*, *e.g.*, *Thompson v. Quorum Health Res., LLC*, 485 Fed. Appx. 783, 792-93 (6th Cir. 2012) ("Quorum's sham investigation showed that the company was not truly concerned with compliance with its Code of Conduct. . . . [I]t was therefore unlikely that Thompson was actually fired because he had violated the Code of Conduct.").

In fact, they took nearly three years to identify any policy. (*See* Sheldon Dep., RE 55, at PageID # 1053, 1056-57.) And Defendants only did so after failing multiple times to point to any real policy that meaningfully implicated HIPAA or patient privacy. (*See id.*, at PageID # 1056-57; Isaac Dep., RE 43, at PageID # 451-52.) Defendants argue that all these policies in some way implicate HIPAA and ultimately reflect the legal obligations of Defendant Kettering. However, it is not

12

clear that Defendants even understand their legal duties under HIPAA. For example, in their Brief, Defendants cite 45 C.F.R. § 164.512(d)(2) as legal support for Defendant Kettering's "minimum necessary policy." (*See* Appellee's Brief, Doc. 21, at p. 13.) To the contrary, that regulation addresses disclosures to health oversight agencies. *See* 45 C.F.R. § 164.512(d)(2).

Fourth, Defendants' Brief demonstrates that even now they are not interested in whether Plaintiff committed a HIPAA violation. A trier of fact can infer pretext where the employer refuses the employee a meaningful opportunity to participate. *See Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 530 (6th Cir. 2005) ("FedEx's chief investigator, never spoke to Gardner about the details of the FedEx pallet account or ever attempted to reconcile the account balance."). Defendants did precisely that, which allowed them to reach conclusions unsupported by the record.

For example, Defendants accused Plaintiff of believing she was entitled to any patient that could have been assigned to her. (*See* Appellee's Brief, Doc. 21, at p. 17.) However, in support of this assertion, they cite a portion of Plaintiff's deposition in which she speaks exclusively about training other speech therapists. (*See* Crossley Dep., RE 39, at PageID # 296.) To the extent Defendants even permitted Plaintiff to participate in the investigation, they dismissed her actual version of the events.

Similarly, Defendants assert that "Crossley readily admit[ted] that she ignored McConnell's admonitions" and "did not make any other attempt to conform her

conduct to align with Kettering's and HIPAA's requirements. (Crossley Dep., RE 39, PageID # 318-19, 330-31, 333-34.)" (Appellee's Brief, Doc. 21, at p. 18.) Again, this is not supported by any facts in the record. In fact, Plaintiff, in her deposition states that she changed her behavior and stopped looking at PHI for scheduling. (*See* Crossley Dep., RE 39, at PageID # 330) ("I changed after they met with me on the 15th. I stopped. I believe I stopped looking in charts, and they said when they fired me, 'Well you were told not to and you did it anyway. You went in the patient of Spencer.'")[2] Defendants make a similarly baseless claim earlier, supported by a citation to Plaintiff's deposition. (*See* Appellee's Brief, Doc. 21, at p. 18.) However, the page cited actually refers to Defendant Isaac's deposition. (*See id.*) (citing RE 39, at PageID # 434-35, 437.) Neither deposition supports Defendants' assertion.

Finally, Defendants demonstrate in their Brief that even now they are uninterested in the underlying facts of their investigation. They claim Defendant Isaac "determined that [Plaintiff] probably did not have a legitimate business reason to access the PHI of any patient who was not actively under her care. (Isaac Dep., RE 43, PageID # 441, 445-46.)" (Appellee's Brief, Doc. 21, at p. 20.) However, in

---

[2]Spencer Ambach is a speech therapist who worked with Ms. Crossley for Defendant Kettering. (*See* Ambach Dep., RE 57, at PageID # 1081.) Defendants assigned Plaintiff to train him. (*See* Mem. Contra MSJ, RE 61-1, at PageID # 1182.) Accessing PHI for training purposes is within Defendant Kettering's Minimum Necessary Policy. (*See* Dep. Ex. 16, RE 55-4, at PageID # 1076.) The parties dispute whether Mr. Ambach asked Plaintiff for training in the days leading up to her termination. (*See* Mem. Contra MSJ, RE 61-1, at PageID # 1183; Isaac Dep., RE 43, at PageID # 447.)

4891-0087-0773, v. 1

those pages Defendant Isaac takes contradictory positions. (*See* Isaac Dep., RE 43 at PageID # 441, 445-46) (stating she only "identified if" the patient files accessed were "active patients or not," and later stating that she determined whether Plaintiff had "legitimate business reasons" for accessing those patient charts.) Defendants also falsely assert that Ms. "McConnell instructed [Plaintiff] on multiple occasions to stop accessing patient PHI." (Appellee's Brief, Doc. 21, at p. 18.) Again, this is not reflected in the record. In fact, the two sections of Plaintiff's deposition Defendants cite in support refer to the same conversation. (*See* Crossley Dep., RE 39, PageID # 324-25, 330-31.)

These statements show that even now Defendants are uninterested in the truth of the matter. They insist on a version of events that is unsupported not only by the record, but by their evidence as well. There is ample evidence to find that Defendants investigation was a sham, and therefore pretext for unlawful discrimination. The Court should hold the honest belief doctrine does not apply and that Plaintiff carried her burden for pretext.

## CONCLUSION

For these reasons, the Court should reverse the district court's order granting Defendants' motion for summary judgment on Plaintiff's claims for age and disability discrimination.

4891-0087-0773, v. 1

Respectfully Submitted,

/s/ *Katherine C. Ferguson*
Katherine C. Ferguson (0079207)
Kevin R. Kelleher (0099167)
KOOPERMAN MENTEL FERGUSON YAROSS LTD.
250 E. Town Street, Suite 250
Columbus, Ohio 43215
Telephone: (614) 344-4800
Facsimile: (614) 344-4801
Email: kferguson@kmfylaw.com
Email: kkelleher@kmfylaw.com

*Counsel For Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Reply Brief of Appellees with the Clerk of the Court using the CM/ECF system on this 10th day of August 2023, which will cause notice of electronic filing to be sent to the parties of record.

*/s/ Katherine C. Ferguson*
Katherine C. Ferguson

4891-0087-0773, v. 1

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned certifies this Reply Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B).

1.      Exclusive of the Exempted Portions in Fed. R. App. P. 32(a)(7)(B), the Reply Brief contains: 4,025 words.

2.      The Brief has been prepared: in proportionally spaced typeface using Times New Roman, 14 font.

*/s/ Katherine C. Ferguson*
Katherine C. Ferguson